**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Pascual Ramon HERNANDEZ,**
**Defendant–Appellant.**

No. 96–10041.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 13, 1996.

Decided Feb. 4, 1997.

Micaela Portillo and Heather E. Williams, Assistant Federal Public Defenders, Tucson, AZ, for defendant-appellant.

James D. Whitney and Roger L. Duncan, Assistant United States Attorneys, Tucson, AZ, for plaintiff-appellee.

Before FLETCHER, WIGGINS, and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

Pascual Ramon Hernandez ("Hernandez") appeals his conviction for illegally reentering the United States following deportation occurring subsequent to an aggravated felony (8 U.S.C. § 1326(b)(2)). We have jurisdiction under 28 U.S.C. § 1291. We affirm.

## FACTS

Sometime in 1993, Hernandez was convicted of an aggravated felony in Oregon. On June 15, 1994, he was deported from the United States to Mexico.

On December 6, 1994, Hernandez was arrested in Arizona and placed in the Santa Cruz County Jail after scaling the border fence between the United States and Mexico. During the booking process at the jail, Hernandez told the officers that he had been born in Mexico.

On December 7, 1994, Eduardo Morales ("Morales"), then a United States Border Patrol Agent, was assigned to check jails for the presence of illegal aliens. Morales went to the Santa Cruz County Jail in Arizona where he met with a person who identified himself as Ramon Cervantes–Romero. At trial, Morales identified this person as Hernandez. After being advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Hernandez told Morales that he had entered the United States by scaling the border fence with Mexico and did not have documentation permitting his entering or remaining in the United States. Hernandez also told Morales that he was born in Mexico on June 3, 1964. After running a computer check on fingerprints obtained from Hernandez, Morales learned that the prints matched a person known as Pascual Ramon Hernandez–Campos.

On January 25, 1995, a federal grand jury indicted Hernandez for illegally reentering the United States after deportation subsequent to a conviction for an aggravated felony in violation of 8 U.S.C. § 1326(b)(2). On October 31, 1995, the jury trial began. At the close of the presentation of evidence, Hernandez moved for a judgment of acquittal due to a lack of sufficient evidence of alienage to sustain a conviction. The district court denied the motion.

The jury began deliberations on November 1, 1995, at 10:00 a.m. At 2:30 p.m., the jury sent the court a note, stating: "We have been unable to reach a unanimous decision about a verdict, please advise." Shortly thereafter, the jury returned to the courtroom and the foreperson told the district court that "we are much closer now than we were initially," but they wanted further guidance on the definitions of "common sense" and "circumstantial evidence." The court advised the jury on those definitions and then proceeded to deliver a modified *Allen* charge. The jury continued deliberations for forty minutes more, then returned a guilty verdict against Hernandez.

On January 16, 1996, the district court sentenced Hernandez to seventy months in prison to be followed by three years of supervised release. This timely appeal followed.

### EVIDENCE OF ALIENAGE

 Hernandez argues that the district court should have granted his motion for a judgment of acquittal at the close of the presentation of evidence because the Government did not offer sufficient proof that the defendant was an alien, an element of the crime for which he was charged. We review the district court's denial of Hernandez's motion for a judgment of acquittal *de novo. United States v. Bahena–Cardenas,* 70 F.3d 1071, 1072 (9th Cir.1995). There is sufficient evidence to support a conviction if, reviewing the evidence in the light most favorable to the Government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Jones,* 84 F.3d 1206, 1210 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 405, 136 L.Ed.2d 319 (1996).

The only evidence of Hernandez's alienage offered by the Government was the defendant's admission to Agent Morales in the Santa Cruz County Jail that he had been born in Mexico. Hernandez presents two challenges to this piece of evidence. First, he argues that his admission to Morales was inadmissible hearsay. Second, he argues that the admission was not adequately corroborated by independent evidence to constitute sufficient proof of the alienage element of the crime charged. Both of these arguments fail.

### A. *Hearsay*

 Hernandez argues that his admission to Morales regarding his birth cannot be used against him because the Government did not establish that Hernandez had the requisite personal knowledge of the facts surrounding his birth, as required by Federal Rule of Evidence 602. Obviously, Hernandez has no personal recollection of his birth. Therefore, Hernandez concludes that his statements to Morales that he was born in Mexico constituted inadmissible hearsay.

This argument fails because, first, a defendant's admissions are specifically exempted from the hearsay rules. Fed.R.Evid. 801(d)(2). Second, even if Hernandez's ad-

missions to Morales amounted to hearsay, the Federal Rules of Evidence contain an exception when a witness is unavailable to testify (like the defendant in a criminal case), allowing the admission of "[a] statement concerning the declarant's own *birth,* adoption, marriage, divorce, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of personal or family history, *even though declarant had no means of acquiring personal knowledge of the matter stated* . . . ." Fed.R.Evid. 804(b)(4)(A) (emphasis added). Therefore, the district court properly admitted Hernandez's admissions concerning the location of his birth.

### B. *Corroboration*

 When the primary evidence of citizenship offered by the Government consists of the defendant's own admissions, those admissions require "some independent corroborating evidence in order to serve as the basis for a conviction." *United States v. Lopez–Alvarez,* 970 F.2d 583, 589 (9th Cir.), *cert. denied,* 506 U.S. 989, 113 S.Ct. 504, 121 L.Ed.2d 440 (1992). To satisfy the corroboration requirement, the Government "must introduce independent evidence tending to establish the trustworthiness of the admissions, unless the confession is, by virtue of special circumstances, inherently reliable." *Id.* at 592. Because corroboration of a defendant's admission is a mixed question of law and fact that is primarily factual, we review for clear error. *United States v. Miller,* 874 F.2d 1255, 1279 (9th Cir.1989). There is no clear error here.

 The fact that, during the booking process, Hernandez told the arresting officers the day before his conversation with Morales that he had been born in Mexico tends to bolster the reliability of his admission to Morales that he had in fact been born in Mexico. A prior contemporaneous admission is admittedly not strong evidence corroborating a later admission, and we do not hold that it would be sufficient by itself to corroborate the later admission, but an earlier admission followed by an identical admission made close in time to the first admission

is an indication of the reliability of the later admission.

Further, the fact that Hernandez entered the United States by scaling the border fence rather than via an established border checkpoint is an indication that Hernandez entered the United States illegally as an alien. Again, we do not hold that the mode of a defendant's entry is sufficient corroboration of an admission that the defendant is an alien, but it provides some evidence that the post-arrest admission is reliable.

Finally, the strongest piece of evidence corroborating Hernandez's admissions to Morales regarding his birth is the record of his deportation from the United States to Mexico on June 15, 1994, prior to the date of the offense alleged in the indictment. We have previously held that "the facts decided in arriving at the deportation order are not conclusive proof of alienage in [a] criminal proceeding." *United States v. Meza–Soria,* 935 F.2d 166, 170 (9th Cir.1991). By itself, a prior deportation order could not constitute sufficient evidence of Hernandez's alienage. However, we hold that the prior deportation order, along with the other corroborating evidence in this case, constitutes sufficient independent evidence to corroborate the defendant's post-offense admission that he is an alien. Therefore, Hernandez's admission to Morales that he was born in Mexico was sufficiently corroborated such that a rational trier of fact, believing that admission to be true, could rely on that admission as proof that he was an alien.

## THE *ALLEN* CHARGE

■ We review the district court's decision to instruct the jury with an *Allen* charge for an abuse of discretion. *United States v. Wills,* 88 F.3d 704, 717 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 499, 136 L.Ed.2d 390 (1996). The district court's deliverance of an *Allen* charge "must be upheld unless it is clear from the record that the charge had an impermissibly coercive effect on the jury." *United States v. Lorenzo,* 43 F.3d 1303, 1307 (9th Cir.1995). The district court did not abuse its discretion here, and the *Allen* charge delivered was not impermissibly coercive.

After four and a half hours of deliberations, the jury sent a note to the district court indicating that they were having problems reaching a unanimous verdict. Upon entering the courtroom, the foreperson stated that "we are much closer now than we were initially, but we would appreciate some guidance from you." After explaining the meaning of two definitions, the district court delivered the following modified *Allen* charge:

> Anyway, I'll send you back and ask you to deliberate a little further. I don't want to do that in an oppressive way, but if you can go back and find out, and then after you have been talking about it, and nothing is going to change, let me know. I'm not going to lock you up and keep you in there like the Simpson jury for the rest of next year, but if you think, however, by discussing the case that you might be able to reach an agreement, then you should work at doing that. You should remember that if this case is tried again, if you are not able to reach a verdict, then the case will be tried again and there will be twelve other jurors and those jurors will be no better equipped to decide this case than you are. They're not any smarter, they're not any wiser or anything else. And furthermore, they're going to hear exactly the same evidence.
>
> So don't any of you abandon any honestly held or strongly held beliefs just to get this case over with.
>
> I'm not trying to push you to a decision in a hasty manner, all I'm trying to do is push you to sit down and see if you can get any closer now than you were when you came into the courtroom this last time. If that's not the case, come back and tell me and I will discharge the jury, okay?

After forty minutes of additional deliberation, the jury returned a guilty verdict against Hernandez.

This instruction contains none of the elements that have constituted "the usual indicia of coercion" in prior cases. Like *United States v. Easter,* 66 F.3d 1018, 1023 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 547, 133 L.Ed.2d 450 (1995), in this case,

the judge ... did not know the numerical division of the jury, or even which way the jury was leaning, let alone which way each particular juror was inclined to vote. Accordingly, no juror in this case had any reason to believe that the charge was being leveled at her, or even that the charge was aimed at jurors on one side or the other.

*See also United States v. Ajiboye,* 961 F.2d 892, 893–94 (9th Cir.1992) (noting that an inquiry into the numerical division of the jury before delivering an *Allen* charge is "per se coercive and requires reversal").

The instruction delivered by the district court was actually milder in several respects than the model instruction suggested by this court. *See* Instruction 7.06, *Ninth Circuit Manual of Model Jury Instructions (Criminal)* 98–99 (West 1995). Unlike the model instruction, the district court in this case did not instruct jurors to re-examine and possibly change their opinions, or to consider questioning the correctness of their present positions.

The district court noted the possibility of retrial should the jury not reach a verdict, but the instruction did not mention the expense that would be incurred by the Government and the defense in the event of a retrial. *See United States v. Bonam,* 772 F.2d 1449, 1450–51 (9th Cir.1985) (finding no abuse of discretion even though the district court improperly told the jury that if they failed to reach a verdict, the case would be retried at additional expense). The district court should not have mentioned the possibility of retrial in this case. However, this comment was made in the context of the district court's statement that no other set of jurors would be better equipped to decide the case than this jury. In this setting, the statement concerning retrial was not coercive.

Hernandez argues that the fact that the jury only deliberated an additional forty minutes following the *Allen* charge demonstrates that the district court's instruction was coercive. Hernandez is correct that "[a] jury verdict reached immediately after an *Allen* charge can be an indication of coercion." *Id.* at 1451. However, the proper inquiry is whether "the total time of deliberation [was] so disproportionate to the task before the jury as to suggest that the *Allen* charge coerced the jury into returning its verdict." *United States v. Cuozzo,* 962 F.2d 945, 952 (9th Cir.), *cert. denied,* 506 U.S. 978, 113 S.Ct. 475, 121 L.Ed.2d 381 (1992). Because the disputed issue in this case was relatively simple (Hernandez's alienage) and the foreperson indicated that the jury had made progress during the deliberations, the additional deliberation of forty minutes was not so short as to raise the specter of coercion.

## CONCLUSION

After carefully considering all of the defendant's arguments in this appeal, we conclude that no error was committed and therefore AFFIRM the defendant's conviction.

AFFIRMED.