UNITED STATES of America,
Plaintiff–Appellee,

v.

Richard Wayne PARKER,
Defendant–Appellant.

No. 00–50078.

D.C. No. CR–98–00749–CAS.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 11, 2001.

Decided Aug. 1, 2001.

Before HUG, GRABER, and W. FLETCHER, Circuit Judges.

MEMORANDUM *

Defendant Richard Wayne Parker appeals his convictions on one count of filing a false income tax return, 26 U.S.C. § 7206(1); one count of conspiracy to possess cocaine, 21 U.S.C. § 846; and three counts of possession with intent to distribute cocaine, 21 U.S.C. § 841(a). We affirm.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

## I. *The Substitution of Judge Matz*

■ The trial judge who presided over the first trial, Judge Snyder, erred in allowing Judge Matz to preside over part of the jury deliberations. Under Federal Rule of Criminal Procedure 25(a), it is "improper" for a presiding judge who "was not ill or otherwise disabled, but merely had a prior commitment," to engage a substitute judge, and Judge Matz never certified that he was familiar with the record. *United States v. Lane,* 708 F.2d 1394, 1396 (9th Cir.1983). However, "procedures that do not strictly comply with Rule 25(a) have been upheld by this court if the defendant has not suffered any prejudice." *Id.* at 1396–97. Defendant argues that he was prejudiced in four ways. None is persuasive; the error was harmless.

### A. *The Dismissal of Juror Vickers*

■ First, Defendant argues that he was prejudiced by Judge Snyder's "improper" dismissal of juror Vickers. We review for abuse of discretion a district court's decision to excuse a juror for "just cause" under Rule 23(b). *United States v. Beard,* 161 F.3d 1190, 1193 (9th Cir.1998).

■ Here, the "just cause" was Vickers' vacation, for which she had purchased non-refundable tickets. We have affirmed a district court's decision to excuse a juror for that reason. *United States v. McFarland,* 34 F.3d 1508, 1512 (9th Cir.1994). Under *McFarland,* the district court did not abuse its discretion in excusing Vickers.

### B. *The Tax Conviction*

Second, Defendant argues that he was prejudiced because his conviction for filing a false income tax return was the result of the "illegal" dismissal of Vickers. Because the dismissal of Vickers was permissible, this argument also fails.

### C. *The Bond Hearing*

■ Third, Defendant argues that he was prejudiced because he did not have a bond hearing immediately after the end of the first trial. Plaintiff is not arguing that the district court erred in denying his motion for bail. Rather, he is arguing only that he was prejudiced by the eleven-day delay between the end of the trial and the bond hearing. Nothing suggests that the modest delay affected the denial of bail; there was no prejudice.

### D. *The Allen Charge*

■ Finally, Defendant argues that he was prejudiced because Judge Matz gave the *Allen* charge that Judge Snyder had chosen, rather than the *Allen* charge that Defendant had proposed. Contrary to his assertion that he was denied the opportunity to argue about the *Allen* charge before an Article III judge, Defendant argued about the charge before both Judge Snyder and Judge Matz.

■ We review for abuse of discretion a district court's decision on whether to give an *Allen* charge and its decision on how to word the instruction. *United States v. Wills,* 88 F.3d 704, 717 (9th Cir.1996). Here, the court gave Ninth Circuit Model Criminal Jury Instruction No. 7.6, which we have approved. *United States v. Daas,* 198 F.3d 1167, 1180 (9th Cir.1999), *cert. denied,* 531 U.S. 999, 121 S.Ct. 498, 148 L.Ed.2d 468 (2000); *United States v. Hernandez,* 105 F.3d 1330, 1334 (9th Cir.1997). Even if Defendant's proposal was as good or better, under *Daas* and *Hernandez* the form given was not an abuse of discretion.

## II. *Double Jeopardy*

In a related assignment of error, Defendant argues that the district court's refusal in the first trial to give his form of an *Allen* instruction or a second *Allen* instruction violated the Double Jeopardy

Clause, because proper instructions would have resulted in an acquittal in the first trial. We already have disposed of the former argument. With respect to the latter, a second *Allen* charge would have been impermissibly coercive in the circumstances. *See Daas,* 198 F.3d at 1179; *Hernandez,* 105 F.3d at 1333. Accordingly, there was no error.

## III. *The Tax Conviction*

■ Defendant also argues that he was deprived of the right to testify without the stigma of a felony conviction at the second trial because of his "unlawful" conviction, in the first trial, for filing a false income tax return. In order "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." *Luce v. United States,* 469 U.S. 38, 43, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). Defendant did not testify at the second trial. Therefore, this argument is waived.

## IV. *Claim of False Testimony*

Defendant claims that the government knowingly used perjured testimony in the first trial. Our review of the record leads us to conclude, as did the district court, that the testimony to which Defendant refers was not false.

## V. *Sixth Amendment*

Next, Defendant argues that the district court violated his compulsory process and confrontation rights under the Sixth Amendment by refusing to allow him to call Breamer as a witness and by limiting his direct examination of Jester.

### A. *Breamer*

Defendant contends on appeal that he should have been allowed to call Breamer to ask him whether he had seen the number "17" written on any of the packages of cocaine that he had handled. However, Defendant never told the district court that he wanted to call Breamer for that purpose, either in his written proffer or at the hearing on this issue.

Defendant also argues that he should have been allowed to call Breamer to testify about Pitto's "need to store her drug profits in a secure location." We agree with the district court that Defendant was, in effect, attempting to call Breamer as an unqualified expert witness, to testify about what drug dealers do with their money generally. The district court properly excluded Breamer's testimony.

### B. *Jester*

Defendant asserts that he should have been allowed to call Jester to explore the question whether Jester had marked a "17" on the cocaine seized from Hensel. Again, Defendant did not state in his proffer that he wanted to call Jester for this purpose. Defendant appears to argue that general statements in his written proffer should be construed broadly, to preserve this argument for review. But the district court held a hearing on this issue. At that hearing, defense counsel argued at length about why he should be allowed to call Jester, but he never mentioned this theory. In the circumstances, the district court cannot be faulted for failing to allow Jester to testify on this basis.

Second, Defendant argues that he should have been allowed to call Jester to ask him about photocopies of the $38,000 that he gave to Hensel, which photocopies Jester apparently lost. The evidence about the missing photocopies was irrelevant. Hensel gave the $38,000 to Pitto, who did not give it to Defendant but, instead, returned it—still in its package—to FBI agents. Defendant never had the $38,000. Defendant was not charged with any offense related to the $38,000. The district court properly concluded that De-

fendant sought to raise this issue solely to impeach Jester with irrelevant material.

### VI. *Expert Testimony about "Drug Ledgers" and "Fountainhead"*

Finally, Defendant argues that the district court improperly allowed Drug Enforcement Agency agent William Bodner to testify as an expert at the second trial. Bodner testified about the "drug ledgers" that agents seized from Defendant's home and about "Fountainhead," a government database that records "brands" (markings on packages) of cocaine that have been seized by the governments of the United States and of the other countries that contribute to the database.

### A. *The "Drug Ledgers"*

Defendant argues that Bodner's testimony about the "drug ledgers" was (1) unreliable and (2) improper evidence of "other bad acts." Defendant's first argument is waived. Defendant's second argument is that Bodner's testimony about the drug ledgers was, in effect, evidence of a second, uncharged, conspiracy. The district court noted that the government has argued all along that Defendant was part of a drug ring that split profits. Accordingly, the court concluded that this was not evidence of *uncharged* bad acts; it was evidence that supported the government's theory about the very crimes with which Defendant was charged.

Defendant argues on appeal, however, that Bodner's testimony effectively charged him with participating in a second, *uncharged* conspiracy. The alleged members of the first conspiracy were known. Bodner did not explicitly say that he was talking about other, unknown participants; indeed, he never mentioned such a possibility. But he must have been talking about unknown co-conspirators, Defendant says, because "Bodner admitted that these other partners of the Appellant were not Pitto, Breamer, Hensel, the acquitted co-

defendants nor anyone involved in the instant Indictment."

The problem with Defendant's argument is that it misstates Bodner's testimony. Bodner never "admitted" anything of the kind. He simply testified that the ledgers appeared to show large sums of money being divided three ways.

█ Without that material misstatement of the record, Defendant's argument evaporates. The idea that money was split among partners is consistent with the way the government charged, tried, and argued this case.

### B. *"Fountainhead"*

Defendant also argues that the district court abused its discretion in allowing testimony about Fountainhead. This court previously has approved of the use of testimony concerning Fountainhead in a criminal trial. *See United States v. Klimavicius–Viloria,* 144 F.3d 1249, 1258 (9th Cir. 1998), *cert. denied,* 528 U.S. 842 (1999). Our conclusion in that case that the evidence from the database was "persuasive" and "len[t] strong support" to the government's case, *id.,* demonstrates that the district court in this case did not abuse its discretion in allowing testimony about Fountainhead.

AFFIRMED.