**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Richard Wayne PARKER, Defendant—
Appellant.**

No. 04–55736.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 15, 2006.

Filed March 10, 2006.

Beverly Reid O'Connell, Esq., Office of the U.S. Attorney, Criminal Division, Los Angeles, CA, for Plaintiff–Appellee.

Michael J. Brennan, Esq., Manhattan Beach, CA, for Defendant–Appellant.

Before: B. FLETCHER and CALLAHAN, Circuit Judges, and ENGLAND,* District Judge.

## MEMORANDUM **

Defendant Richard Wayne Parker appeals from the denial of his motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his conviction and sentence. Parker was convicted in his first trial of one count of filing a false tax return, 26 U.S.C. § 7206(1), and in his second trial of one count of conspiracy to possess cocaine, 21 U.S.C. § 846, and three counts of possession with intent to distribute cocaine, 21 U.S.C. § 841(a).[1]  His

---

* The Honorable Morrison C. England, United States District Judge for the Eastern District of California, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

1.  At his first trial Parker was also acquitted of certain possession counts and a money laundering count. The jury was hung on the conspiracy charge and the remaining possession charges.

§ 2255 motion and this appeal allege ineffective assistance of counsel on the basis of numerous errors made by his trial attorney during both of these proceedings. Parker also contends that his appellate counsel, on direct appeal from his second trial, provided ineffective assistance. We affirm the district court's denial of his motion.

## I.

In July of 1997, 295 kilograms of cocaine were stolen from a Bureau of Narcotics Enforcement ("BNE") evidence vault.[2] Parker was one of approximately ten law enforcement personnel who had the key and alarm code allowing entry into the vault. Investigators determined that three types of cocaine had been stolen from the vault—kilograms wrapped in black and yellow rubber, kilograms marked "Gucci," and kilograms marked with a handwritten "17."

About a year later, in May 1998, FBI agents arrested a suspected cocaine trafficker, Gary Hensel, in an unrelated investigation; they discovered just over seven kilograms of cocaine in Hensel's garage ("the Hensel kilograms"). Hensel informed the agents that he had wrapped the kilograms in saran wrap, zip-lock bags, and gray duct tape because he planned to transport the drugs to Michigan in tires. Hensel cooperated with the investigators by making recorded telephone calls to his supplier, Monica Pitto. Accordingly, the agents were able to monitor a transaction between Pitto and Hensel in which Hensel provided Pitto with $38,000 furnished by the government and obtained one kilogram

of cocaine at Pitto's residence. Pitto indicated that she was meeting with her supplier in Pasadena, California, later that same day. Agents then followed Pitto, and at around noon, she met Parker on the rooftop of a parking garage, where she provided him with an envelope containing $47,000. Both Pitto and Parker were then apprehended at that point.

Pitto became a cooperating witness and told agents that Parker had been supplying her with cocaine since 1992. Pitto stated that Parker delivered cocaine to her on consignment in gym bags and expected money after she sold the drugs. She estimated that he had provided her with between 120–130 kilograms of cocaine between 1996 and 1998 alone.

Agents searched Parker's BNE vehicle after his arrest, and they found over $79,214 in cash in twelve different locations in the truck. They also recovered from the truck seven guns and two distraction grenades. In the search of his house and other locations associated with Parker, agents discovered $66,000 in a wall safe, $113,500 in a black pistol case, and $284,540 in Parker's personal vehicle. In the searches of locations associated with Parker, agents found 25 gym bags, some containing cash, that were big enough to transport a kilogram or more of cocaine. Sixteen of the bags contained trace amounts of cocaine.

Also discovered in these searches were receipts for cash purchases Parker had made during the year between the burglary and his arrest, totaling $74,540.66. The income Parker reported on his tax return for this year was $55,000. Over the course

2. This cocaine was used by the BNE in reverse sting operations. It originated from a 1994 seizure of over 600 kilograms by the Anaheim Police Department ("APD"). The APD turned over only a portion of the 600 kilograms to the BNE and retained some for its own operations. After the BNE evidence vault was burglarized, the cocaine retained by the APD, "the Anaheim kilograms," was compared to the cocaine recovered in this investigation.

of the investigation, agents learned of many purchases that Parker had made using cash, including numerous used vehicles, expensive gifts for his girlfriend, and rent for an apartment he rarely used.

After Hensel's arrest, the Hensel kilograms were transported to the DEA laboratory, where they were compared to the Anaheim kilograms by a DEA chemist, Scott Oulton. Oulton determined that the wrappers from the Anaheim cocaine and the Hensel cocaine both included a clear plastic layer with the number "17" handwritten on it and a simulated wood contact paper with Spanish writing on it indicating that it was made in Medellin, Columbia. The kilograms were wrapped in the exact same way, except that the Hensel cocaine had a loose outer wrapping of ziplock bags and duct tape that Hensel indicated he had added in order to protect the drugs while they were being transported in tires. Oulton testified that in his opinion, the Anaheim kilograms and the Hensel kilograms were from the same source.

In October of 1999, following his second trial, Parker was convicted by a jury of one count of conspiracy to possess cocaine, and three counts of possession with intent to distribute cocaine. In January of 2000, he was sentenced to life imprisonment, five years of supervised release, a $16 million fine, and a $500 special assessment. His sentence was based on a finding, by the judge, that his base offense level was 38, because his offenses involved more than 150 kilograms of cocaine. Parker's sentence was increased because of three enhancements: 1) a two-level increase pursuant to USSG § 2D1.1(b)(1) for possession of a dangerous weapon, 2) a four-level increase pursuant to USSG § 3B1.1(a) for being an "organizer or leader of a criminal activity that involved five or more participants," and 3) a two-level increase pursuant to USSG § 3B1.3 for abuse of a position of trust.

In August of 2002, after an unsuccessful appeal to this court, Parker filed a § 2255 motion, alleging ineffective assistance of counsel in violation of the Sixth Amendment resulting from various errors at trial and on direct appeal. Parker argues that his trial counsel rendered ineffective assistance in four ways: 1) in the first trial he stipulated to a jury instruction on the tax charge that the failure to report income is necessarily a material matter, removing an element from the jury's consideration, 2) in the second trial he failed to request a jury instruction requiring the jury to find drug quantity beyond a reasonable doubt, 3) he failed to advise Parker that if he chose not to testify at his second trial, he would lose his opportunity to appeal the court's ruling permitting impeachment with his conviction on the tax charge, and 4) he failed to make an appropriate proffer explaining why Agent Frank Jester and Jeffrey Breamer should testify as defense witnesses at the second trial, resulting in the court's exclusion of those witnesses. Parker also alleges that his counsel was ineffective for failing to raise various issues on appeal: 1) he argues that since *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), was decided before his direct appeal was submitted, his counsel should have argued that failing to require the jury to determine drug quantities was an *Apprendi* error, and 2) he argues that his counsel should have objected to two of his sentencing increases. Finally, Parker argues that the district court erred in not providing him an evidentiary hearing on any of these allegations.

## II.

The district court's decision to grant or deny a federal prisoner's 28 U.S.C. § 2255 motion is reviewed de novo. *United States*

v. *Rodrigues,* 347 F.3d 818, 823 (9th Cir. 2003); *United States v. Skurdal,* 341 F.3d 921, 925 (9th Cir.2003). A district court's decision to grant or deny an evidentiary hearing is reviewed for abuse of discretion. *Rodrigues,* 347 F.3d at 823; *United States v. Leonti,* 326 F.3d 1111, 1116 (9th Cir. 2003).

In order to show that his counsel was ineffective, Parker must meet the standard set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, he must show that his counsel's representation fell below an "objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. This is a deferential standard in which the "distorting effects of hindsight" must be avoided. *Id.* at 689, 104 S.Ct. 2052.

> [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689, 104 S.Ct. 2052 (internal quotation marks omitted).

Second, he must establish that prejudice resulted from his counsel's faulty performance. *Id.* at 692, 104 S.Ct. 2052. To do so, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. Parker has been unable to show that any of his counsel's alleged errors at trial and on appeal meet the *Strickland* standard. The district court did not err in finding that there was no ineffective assistance of counsel.

### A. The Materiality Jury Instruction

At his first trial, Parker was convicted of subscribing to a false tax return under 26 U.S.C. § 7206(1), which makes it a crime for a person to file a tax return which "he does not believe to be true and correct as to every material matter." Parker's attorney stipulated to "Joint Proposed Instruction Number 40," which read:

> [I]nformation in the tax return in question is material if it had a natural tendency to influence, or was capable of influencing or affecting the actions of the Internal Revenue Service, such as to verify the accuracy of the tax return in question and to determine whether the tax payer had tax due and owing.
>
> *The failure to report income is a material matter* for purposes of a violation of Title 26 United States Code, Sec. 7206(1).

The government concedes that the final sentence of the instruction was "erroneous," because it removed the element of materiality from the jury's consideration.

Parker admitted at his first trial that he failed to report $6000–8000 of income. He argues that the jury felt compelled to return a guilty verdict on this count because of the faulty jury instruction and speculates that if permitted to consider the materiality of the $6000–8000, the jury would have acquitted him.

■ Materiality in a prosecution for filing a materially false tax return is a mixed question of fact and law that must be submitted to the jury. *United States v. Uchimura,* 125 F.3d 1282, 1286 (9th Cir. 1997), relying on *United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) (holding that a defendant has a right to have a jury decide materiality where it is an element of the offense). This principle was established in the Ninth Circuit at the time of Parker's first trial, so his counsel should have been aware that materiality should be determined by the jury. However, this circuit has held that

taking materiality from the jury's consideration is not reversible error when the evidence of materiality is overwhelming. *See United States v. Scholl,* 166 F.3d 964, 981 (9th Cir.1999). There can be little doubt that the $6000–8000 sum Parker admittedly failed to report on his tax return was "material," in that it would have influenced the IRS's determination of how much tax Parker owed. Since this evidence is overwhelming and uncontested, Parker cannot show that he was prejudiced by his trial counsel's acquiescence in an incorrect materiality instruction.

### B. The Drug Quantity Jury Instruction

At Parker's second trial, he was retried on charges of conspiracy with intent to distribute cocaine and possession with intent to distribute cocaine, as the jury in the first trial was unable to reach a unanimous verdict on those counts. Parker's trial counsel stipulated to the following jury instruction:

> The evidence received in this case need not prove the actual amount of cocaine which was part of the alleged transactions or the exact amount of the cocaine alleged in ... [the] Indictment. The government must prove beyond a reasonable doubt, however, ... that a measurable amount of cocaine was possessed with intent to distribute.

Because of this instruction, the jury was not required to determine the amount of cocaine involved in the possession charges.

Prior to the commencement of the retrial, the Supreme Court decided *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), which foreshadowed *Apprendi.* Parker argues that *Jones* established that drug quantities must be charged in the indictment and submitted to the jury for determination beyond a reasonable doubt since they in-

crease the maximum possible sentence and that reasonably competent counsel would have insisted that the jury find the quantities of cocaine at issue in each of the counts beyond a reasonable doubt.

This ignores that at the time of Parker's sentencing, "virtually everyone routinely treated drug quantity under § 841 as a 'sentencing factor' that need not be found beyond a reasonable doubt by a properly instructed jury." *United States v. Buckland,* 289 F.3d 558, 564 (9th Cir.2002); *see also United States v. Cotton,* 535 U.S. 625, 628, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (noting that prior to *Apprendi,* judicial fact-finding of drug quantity at sentencing was the practice in federal courts); *United States v. Brinton,* 139 F.3d 718, 722 (9th Cir.1998) (treating drug quantity as a sentencing factor that need not be found beyond a reasonable doubt by a jury). Though the constitutional concerns raised in *Jones* brought the Court one step closer to *Apprendi's* ultimate holding, it would be too high a standard to hold that Parker's counsel's inability to predict *Apprendi* represented ineffective assistance of counsel. Parker cannot show that his counsel's stipulation to a jury instruction, which represented the state of the law at the time, was objectively unreasonable.

### C. Advice Not to Testify

■ Parker argues that his counsel's advice that he not testify at his second trial constituted ineffective assistance of counsel. At his first trial, Parker testified that he was not involved in the cocaine conspiracy and was convicted only on the tax charge. Prior to his retrial, the district court made an evidentiary ruling that Parker could be impeached with his prior tax conviction. Accordingly, Parker's attorney advised him not to testify, in order to avoid the use of the prior conviction to impeach him. Parker had reservations

about this strategy but on his attorney's advice decided not to testify.

On direct appeal, Parker argued that he was deprived of his right to testify without the stigma of a felony conviction at the second trial. This court rejected his argument, holding that Parker had waived this argument by failing to testify. *United States v. Parker,* 16 Fed.Appx. 682, 685 (9th Cir.2001) (unpublished memorandum disposition), citing *Luce v. United States,* 469 U.S. 38, 43, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) (holding that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify"). Parker argues that he was prejudiced by his trial counsel's failure to notify him that in not testifying he would waive his right to appeal the trial court's ruling permitting impeachment based upon the false tax return conviction.

Advising Parker not to testify was a reasonable strategic assessment that opening Parker to impeachment based on the past conviction would be damaging. Even if his attorney's advice was objectively unreasonable, however, Parker has not shown that prejudice resulted from this decision. He argues that because he testified at his first trial and the jury hung on the drug counts, his subsequent convictions at the second trial can only be explained by his failure to testify. But the government points out several differences between the two trials that could also explain the difference in outcome. Parker has not shown that advising him not to testify constituted ineffective assistance of counsel.

### D. Incomplete Proffer

At Parker's second trial, a dispute arose over whether to hear the testimony of two government witnesses from the first trial—Agent Frank Jester, the lead agent on Parker's case, and Jeffrey Breamer, who bought cocaine from one of Parker's customers. When the government decided not to call them at the retrial, Parker's counsel attempted to do so. He told the court that he wanted to question Jester about three things: the whereabouts of photocopies of the $38,000 of government funds Hensel handed over to Pitto, the chain of custody of some of the cocaine seized during the investigation, and alleged misrepresentations he made to the grand jury. He stated that he wished to question Breamer as an expert on the manner of storing profits. The court excluded both witnesses, finding that the real purpose for calling both witnesses was to impeach them.

On appeal, counsel articulated for the first time that he should have been permitted to call Jester to establish that Jester had sought to frame Parker by putting "17" markings on the Hensel kilograms. He also argued for the first time that he wanted to question Breamer as to whether he had seen the "17" markings. On direct appeal we upheld the trial court's exclusion. Parker argues here that his trial counsel's failure to make the appropriate record before the district court to preserve his right to confrontation constituted ineffective assistance of counsel.

Parker has not shown that the testimony of Jester and Breamer would have been favorable to him, by supporting his late-developed conspiracy theory that Jester tampered with the Hensel kilograms. Even if we were to assume that his counsel's failure to articulate these bases for calling Jester and Breamer was objectively unreasonable, Parker cannot show that he was prejudiced by their exclusion.

### E. Failure to Raise *Apprendi* Challenge

The Supreme Court decided *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348,

147 L.Ed.2d 435 (2000), on June 26, 2000, six months after Parker's sentencing. Parker argues that *Apprendi* calls into question the life sentence imposed on him, which relied on a judicial fact-finding of the drug quantities involved in his offenses. The parties agree that had an *Apprendi* challenge been raised on direct appeal, this court would have reviewed for plain error.

In order to succeed under the plain error standard, Parker would have had to show that 1) there was error, 2) it was plain, 3) it affected substantial rights, and 4) that the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Cotton*, 535 U.S. 625, 631, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), quoting *Johnson v. United States*, 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). In *Cotton*, a defendant raised an *Apprendi* error similar to the one at issue here: at sentencing, the judge had found the quantity of drugs at issue in defendant's convictions for conspiracy to distribute and possession with intent to distribute cocaine, as was the practice at the time. *Apprendi* was decided while the *Cotton* appeal was pending at the Fourth Circuit. The Fourth Circuit concluded that the judge's determination of drug quantity was plain error, but the Supreme Court reversed. The Court reasoned that the error "did not seriously affect the fairness, integrity, or public reputation of judicial proceedings" because "the evidence that the conspiracy involved at least 50 grams of cocaine base was 'overwhelming' and 'essentially uncontroverted.'" *Id.* at 632–33, 122 S.Ct. 1781.

■ As in *Cotton*, the evidence that Parker was involved in trafficking at least 15 kilograms of cocaine was overwhelming and virtually uncontested.[3] Pitto testified that the $47,000 she delivered to Parker on the day of his arrest was payment for 14 kilograms of cocaine. Pitto also testified that between 1996 and 1998, she received approximately 120–130 kilograms of cocaine from Parker. The cocaine seized from Hensel, alleged to have been supplied by Parker, was linked with the cocaine stolen from the BNE vault; nearly 300 kilograms of cocaine were stolen from the BNE vault. Parker never alleged in his objections to the pre-sentencing report that the conspiracy involved less than 15 kilograms of cocaine. Thus, even if we assume that his counsel's failure to raise an *Apprendi* error on appeal was objectively unreasonable, Parker cannot say that there is a reasonable probability that the outcome would have been different as is required under *Strickland.*

### F. Failure to Challenge Sentencing Enhancements

■ Parker's sentence was increased because of three enhancements: 1) a two-level increase pursuant to USSG § 2D1.1(b)(1) for possession of a dangerous weapon, and 2) a four-level increase pursuant to USSG § 3B1.1(a) for being an "organizer or leader of a criminal activity that involved five or more participants," and 3) a two-level increase pursuant to USSG § 3B1.3 for abuse of a position of trust. On appeal, Parker's counsel failed to challenge the gun or leadership role enhancements. Parker argues here that this failure to challenge the enhancements on appeal constituted ineffective assistance of counsel.

---

**3.** This is the relevant quantity for *Apprendi* purposes, since that is the lowest quantity at which Parker could still receive a life sentence, assuming that his sentencing enhancements were the same. *See* United States Sentencing Commission Guidelines, *Guidelines Manual* 95, 310 (Nov.1998).

Parker has not shown that his counsel's decision not to appeal the use of the sentencing enhancements was objectively unreasonable, or that if he had there exists a reasonable probability that the outcome would have been different. To justify a four-point enhancement under USSG § 3B1.1(a), "[a] preponderance of the evidence must show that the defendant was an organizer or leader...." *United States v. Barajas–Montiel,* 185 F.3d 947, 956–957 (9th Cir.1999). Since Parker initially approached Pitto about whether she would sell cocaine that he supplied, he eventually took a larger share of the profits from the sales and set the prices, and had access to the source of the cocaine, the record amply supports the finding that Parker was an organizer or leader. Since Parker cannot show that the enhancement was not supported by the record, he certainly cannot show that his counsel on appeal was ineffective for failing to pursue this fruitless line of argument.

To justify the gun enhancement under § 2D1.1(b)(1), the court need not find a connection between the weapon and the offense. It is enough to find that the defendant possessed the weapon during the commission of the offense. *United States v. Lopez–Sandoval,* 146 F.3d 712, 714 (9th Cir.1998); *United States v. Restrepo,* 884 F.2d 1294, 1296 (9th Cir.1989). The enhancement should not be applied only if "it is clearly improbable that the weapon was connected with the offense." United States Sentencing Commission Guidelines, *Guidelines Manual* 103 (Nov. 1998).

The enhancement pursuant to § 2D1.1(b)(1) was also amply supported by the record. As noted in the PSR, seven guns and two distraction grenades were found in Parker's vehicle at the time of his arrest. While Parker may have possessed these weapons in connection to his employment with the BNE, their presence can also be explained as protection for the substantial amount of cash (over $79,000) Parker was keeping in the vehicle. In any event, it is not "clearly improbable" that the weapons were connected to the offenses. Since Parker cannot show that the enhancement was not supported by the record, he certainly cannot show that his counsel on appeal was ineffective for making the tactical decision not to pursue this line of argument.

## III.

Parker has largely been unable to show that the alleged errors of his counsel fell below an objective standard of reasonableness as is required by *Strickland.* Even where it is arguable that his counsel's performance fell below that standard, Parker has been unable to show that prejudice resulted from the errors. Thus, Parker is not entitled to relief for ineffective assistance of counsel pursuant to 28 U.S.C. § 2255. Because the record conclusively shows that he is not entitled to relief, the district court did not abuse its discretion in denying Parker an evidentiary hearing.

**AFFIRMED.**