FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

JUAN CARLOS BEJAR-GUIZAR,

*Defendant - Appellant.*

No. 23-3201

D.C. No.
3:19-cr-03191-
WVG-AJB-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Anthony J. Battaglia, District Judge, Presiding

Argued and Submitted May 13, 2025
Pasadena, California

Filed July 9, 2025

Before: Ryan D. Nelson, Kenneth K. Lee, and Jennifer
Sung, Circuit Judges.

Opinion by Judge Lee

## SUMMARY[*]

### Criminal Law

The panel affirmed Juan Carlos Bejar-Guizar's conviction for unlawful entry into the United States in violation of 8 U.S.C. § 1325(a)(1).

Bejar-Guizar contended that Border Patrol agents lacked reasonable suspicion to briefly detain him under the Fourth Amendment. The panel rejected this argument. Reasonable suspicion requires far less than probable cause, and it does not impose a very high bar. Law enforcement officers need not rule out an alternative, innocent explanation when they stop someone for reasonable suspicion. The totality of the circumstances here gave the Border Patrol agents ample basis for suspecting that Bejar-Guizar had entered the United States illegally.

Bejar-Guizar also argued that his admissions of alienage were not sufficiently corroborated by independent evidence under the doctrine of *corpus delicti*. The panel rejected this argument because the circumstantial and other evidence establish both Bejar-Guizar's alienage and the trustworthiness of his admissions.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Peter Horn (argued), Amy B. Wang, Kelly Reis, and Robert A. McElhose, Assistant United States Attorneys; Daniel E. Zipp, Assistant United States Attorney, Chief, Appellate Section, Criminal Division; Tara K. McGrath, United States Attorney; Office of the United States Attorney, United States Department of Justice, San Diego, California; for Plaintiff-Appellee.

Zandra L. Lopez (argued) and Jory A. Burks, Attorneys, Federal Defenders of San Diego Inc., San Diego, California; for Defendant-Appellant.

## OPINION

LEE, Circuit Judge:

On a densely foggy early morning in the Imperial Beach area of San Diego, U.S. Border Patrol agents spotted a man walking along a divided highway. The agents noticed that the man had muddy legs and boots—as if he had just crossed the Tijuana River by the border. He was walking on the side of the highway with no sidewalk, about 300 yards north of the U.S.-Mexico border, at a time when most nearby stores were still closed. One of the agents stopped the man, later identified as Juan Carlos Bejar-Guizar, for an immigration inspection. He admitted that he was here unlawfully. He was later convicted of unlawful entry into the United States.

We reject Bejar-Guizar's contention that the Border Patrol agents lacked reasonable suspicion to briefly detain him under the Fourth Amendment. Reasonable suspicion

requires far less than probable cause, and it does not impose a very high bar. *See United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc). Law enforcement officers need not rule out an alternative, innocent explanation when they stop someone for reasonable suspicion. The totality of the circumstances here gave the Border Patrol agents ample basis for suspecting that Bejar-Guizar had entered the United States illegally. We thus affirm.

## BACKGROUND

Bejar-Guizar crossed the U.S.-Mexico border with a group of people and then got left behind. He had entered the U.S. at night, during heavy fog, without inspection by any immigration official. Two Border Patrol agents—members of an Intelligence Anti-Smuggling Unit strike team—had been deployed to perform "fog cutting," *i.e.*, assisting line Border Patrol agents with stopping illegal drugs and immigrants during heavy fog.

The first agent saw Bejar-Guizar the next morning. Bejar-Guizar was not jogging or walking a dog, and he was walking on the side of the road with no sidewalk. Because the agent was driving in the opposite direction as the man, he radioed his partner to take a closer look. The second agent got two good looks. On his first drive-by, he observed that Bejar-Guizar was walking in the roadway itself and was not trying to flag down any passing vehicles. Then, turning his vehicle around, the agent saw that the man had mud on his legs and boots, as if he had freshly crossed the Tijuana River. The agent stopped Bejar-Guizar to ask him several questions.

Bejar-Guizar told the agent that he: (1) was from Mexico, (2) did not have documents allowing him to enter

or stay in the U.S. legally, (3) had crossed the border the night before, and (4) had gotten lost. The agent arrested Bejar-Guizar for entering the U.S. illegally and called for transport.

Bejar-Guizar was taken to the Imperial Beach Border Patrol station and interviewed by a supervisory agent. After receiving his *Miranda* rights, Bejar-Guizar again stated that he was a citizen of Mexico, had no immigration petitions on his behalf, had entered the U.S. by jumping over the border fence near Tijuana, and had not presented himself to any immigration official. Bejar-Guizar was charged with unlawful entry into the United States in violation of 8 U.S.C. § 1325(a)(1).[1]

Bejar-Guizar was convicted and sentenced to time served. On appeal, he argues that the Border Patrol agent lacked reasonable suspicion to stop him and that any evidence resulting from his detention should have been suppressed. He also contends that his incriminating admissions were not corroborated by independent evidence under the doctrine of *corpus delicti*. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the district court.

## DISCUSSION

"We review reasonable suspicion determinations de novo, reviewing findings of historical fact for clear error and giving 'due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" *United*

---

[1] "*Improper entry by alien.* (a) Improper time or place; avoidance of examination or inspection; misrepresentation and concealment of facts: Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers . . . shall, for the first commission of any such offense, be fined under title 18 or imprisoned not more than 6 months, or both . . . ." 8 U.S.C. § 1325.

*States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (en banc) (citation omitted). "Corroboration is a 'mixed question of law and fact that is primarily factual,' so we review it for clear error." *United States v. Gonzalez-Godinez*, 89 F.4th 1205, 1208 (9th Cir. 2024) (citation omitted).[2]

## I. The Border Patrol agent had reasonable suspicion to stop Bejar-Guizar.

We have recognized that Border Patrol "agents must keep our country safe by curbing the smuggling of undocumented aliens and drugs." *Valdes-Vega*, 738 F.3d at 1076. In acknowledging the critical role that Border Patrol agents play, we have held that reasonable suspicion to stop someone near the border is not a high bar: Agents who lack "the precise level of information necessary for probable cause to arrest" need not simply "shrug [their] shoulders and allow . . . a criminal to escape." *Id.* at 1078 (citation omitted). Rather, protection of the public safety requires that an agent need only have "a particularized and objective basis for suspecting the particular person stopped of criminal

---

[2] It is true, as Bejar-Guizar argues, that we review the sufficiency of evidence on the denial of a motion for judgment of acquittal de novo. *United States v. Hernandez*, 105 F.3d 1330, 1332 (9th Cir. 1997). But where that motion is based on a challenge that "the admission was not adequately corroborated by independent evidence to constitute sufficient proof," we have never strayed from clear error review of the underlying issue of the adequacy of corroboration. *Id.* ("Because corroboration of a defendant's admission is a mixed question of law and fact that is primarily factual, we review for clear error."). This is so because factual determinations are given more deference than legal conclusions on appeal. In any event, Bejar-Guizar's challenge fails regardless of the standard of review that we apply.

activity" to make a stop. *Id.* (quoting *Cotterman*, 709 F.3d at 968).

*Valdes-Vega* provides several helpful principles for evaluating the basis for an officer's reasonable suspicion.

First, we must look at the totality of the circumstances. Rather than cherry-picking each fact in isolation, we must evaluate all relevant factors together in the context of the stop. *See id.* at 1078–79. Factors may include "characteristics of the area, proximity to the border, usual patterns of traffic and time of day, previous alien or drug smuggling in the area, . . . appearance or behavior of" the individuals involved, and so on. *Id.* at 1079 (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 884–85 (1975)).

Second, we must "defer to the inferences drawn by the district court and the officers on the scene." *Id.* at 1077. Because Border Patrol agents are trained to make "inferences [ ] and deductions . . . that might well elude an untrained person," our review of the circumstances must be "filtered through the lens of the agents' training and experience." *Id.* at 1078–79 (citations omitted).

Finally, reasonable suspicion review should focus not on the likelihood of *innocent* behavior in context but of *criminal* activity. *See id.* at 1080 (citing *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). As long as an officer has a particularized and objective basis for suspecting someone of a crime, he need not rule out potentially innocent explanations before making a stop, "even if it is far from certain that the suspect is actually engaged in illegal activity." *Id.* (citations omitted); *see id.* ("A series of innocent acts may be enough for reasonable suspicion justifying an investigatory stop, even though the circumstances amount to far less than probable cause.").

Applying these principles, we hold that the agent who detained Bejar-Guizar had reasonable suspicion to stop him. First, that agent had twelve years of experience as a U.S. Border Patrol agent assigned to Imperial Beach, including two years on the anti-smuggling surveillance strike team. He was trained in conducting inspections, surveillance, and immigration law at an academy before starting. On the day of the arrest, the agent had been specially deployed to support line agents with surveillance near the border because the prior night's "heavy fog" both encouraged "people [to] try to come across [ ] the border" and made those people harder to detect. At trial, the agent specifically testified that based on his years of experience, "individuals will try to take advantage of heavy fog banks to unlawfully enter the United States."

This is what the arresting agent apparently observed: Around 7:30 a.m.—before most stores are open—the agent saw a man walking in the street. It was a divided highway with two lanes per side, and the man was oddly walking on the side of the street without a sidewalk. The agent was familiar with this specific area and had made arrests there before. There were no businesses on the side of the road where the man was walking.

On the agent's initial pass by Bejar-Guizar, he first focused on whether he appeared to be a local citizen walking with other pedestrians or trying to flag down passing vehicles. He did not. To gather more information, the agent made a U-turn and took a closer look. He observed that Bejar-Guizar had mud on "his lower extremities, like his legs and his boots," as well as on his clothing "on the top." The agent thus concluded that the man may have "just crossed through some mud."

This led the agent to form a suspicion that the man "probably was here [in the United States] illegally," for a few reasons. First, the man was walking just 300 yards north of the U.S.-Mexico border. Second, the only local residents the agent had seen walking on the side of the road with no sidewalk in his years of experience were homeless people— but even they "usually . . . stay on the other side." Third, the mud on the man led the agent to suspect that he had just crossed the Tijuana River, which the agent knew was a muddy river valley lying between the U.S.-Mexico border and where the agent saw the man. Based on the agent's experience, "people that come from that area [are] all going to be muddy." Finally, the agent knew from experience that to reach the river from Mexico in the first place, you "pretty much . . . have to jump over" the "secondary border fence" separating the U.S. from Mexico. Crossing over that fence without inspection is illegal.

Our analysis of reasonable suspicion could stop here because the agent already formed—based on his training, experience, and observation—"a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Cotterman*, 709 F.3d at 968 (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). But the agent went further. He confirmed that Bejar-Guizar was not walking a dog or walking with other pedestrians. He confirmed that the man did not look like a hiker, and that there were no businesses nearby that the man likely was trying to access. Although he did not have to do so, the agent did try to rule out innocent explanations for why the muddy man may have been walking in the street at 7:30 a.m. *See Valdes-Vega*, 738 F.3d at 1078–79, 1080.

The arresting agent's observations amounted to far more than a "mere hunch," as Bejar-Guizar argues. Bejar-

Guizar's appearance "was not so innocuous as to suggest that he was merely plucked from a crowd at random." *Id.* at 1080. And as the Supreme Court has explained, "illegal entry of aliens" is a crime that the Border Patrol works hard to address: The Fourth Amendment does not require an agent to "simply shrug his shoulders and allow a crime to occur or a criminal to escape" even without probable cause to arrest. *Brignoni-Ponce*, 422 U.S. at 878, 881 (citation omitted). The agent is allowed to stop a suspect to find out more, as the agent properly did here.

## II. Bejar-Guizar's admissions of alienage were sufficiently corroborated.

Bejar-Guizar also argues that his admissions that he was in the United States unlawfully were not sufficiently corroborated by independent evidence under the doctrine of *corpus delicti*. We recently explained that "*corpus delicti* does not impose a high bar for the government to clear, and . . . [it] need only offer evidence that bolsters" Bejar-Guizar's confessions. *Gonzalez-Godinez*, 89 F.4th at 1210 (citations omitted) (cleaned up). The circumstantial and other evidence in this case "establish" both Bejar-Guizar's alienage and the trustworthiness of his admissions under our precedent. *See United States v. Valdez-Novoa*, 780 F.3d 906, 923 (9th Cir. 2015) (citation omitted).

First, the same circumstantial evidence that supports reasonable suspicion also proves the *corpus delicti*. *See United States v. Niebla-Torres*, 847 F.3d 1049, 1056 (9th Cir. 2017) (relying on circumstantial evidence). The facts observed by the agents corroborate the "specific details" of Bejar-Guizar's two admissions that he was from Mexico, had crossed the border at night, and had gotten lost. *See Valdez-Novoa*, 780 F.3d at 925. Bejar-Guizar also had a

prior deportation, which corroborates an admission of alienage. *Hernandez*, 105 F.3d at 1333. Finally, Bejar-Guizar's first admission in the field "is an indication of the reliability of [his] later admission" at the Border Patrol station, in which he reaffirmed his alienage. *Id.* at 1332–33.

These pieces of independent evidence corroborate Bejar-Guizar's admissions that he was a Mexican citizen who unlawfully entered the United States. The district court did not clearly err in rejecting Bejar-Guizar's *corpus delicti* argument.

**AFFIRMED.**