**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

RUFINO IGNACIO VALDES-VEGA,
*Defendant-Appellant*.

No. 10-50249

D.C. No.
5:09-cr-00024-
VAP-1

OPINION

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted En Banc
June 25, 2013—Seattle, Washington

Filed December 24, 2013

Before: Alex Kozinski, Chief Judge, and Harry Pregerson,
Stephen Reinhardt, Sidney R. Thomas, M. Margaret
McKeown, Ronald M. Gould, Jay S. Bybee, Sandra S.
Ikuta, Morgan Christen, Paul J. Watford and Andrew D.
Hurwitz, Circuit Judges.

Opinion by Judge Gould;
Dissent by Judge Pregerson;
Dissent by Judge Reinhardt

# SUMMARY[*]

## Criminal Law

The en banc court affirmed the district court's denial of a motion to suppress evidence of cocaine found as a result of border patrol agents' stop of a vehicle on a highway linked to the United States-Mexico border.

The en banc court held that in light of the totality of the circumstances, the two experienced border patrol agents, who observed a truck with foreign plates driving in a suspicious manner in an area frequented by smugglers, had a reasonable, particularized basis for suspecting that the defendant was smuggling contraband, justifying the stop.

The en banc court explained that prior decisions holding that certain factors are *per se* not probative or are *per se* minimally probative do not now comply with Supreme Court precedent.

Dissenting, Judge Pregerson, joined by Judges Reinhardt and Thomas, wrote that driving without signaling lane changes and faster than the flow of traffic on a busy California interstate highway, plus defendant's Hispanic appearance, plus his eyes on the road, plus his driving a clean Ford F-150, plus Baja California plates, did not create a reasonable suspicion that criminal activity was afoot.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Dissenting, Judge Reinhardt, joined by Judges Pregerson and Thomas, wrote that the majority errs in ignoring the distinction between the innocent acts in this case and those in *United States v. Arvizu*, 534 U.S. 266 (2002).

---

## COUNSEL

Gretchen Fusilier, Carlsbad, California, for Defendant-Appellant.

Mark Yohalem (argued), Assistant United States Attorney; André Birotte, Jr., United States Attorney; Robert E. Dugdale, Assistant United States Attorney, Criminal Division Chief; Daniel Ackerman, Assistant United States Attorney, United States Attorney's Office, Riverside, California, for Plaintiff-Appellee.

---

## OPINION

GOULD, Circuit Judge:

We must decide whether border patrol agents permissibly stopped a vehicle on a highway linked to the border. On the one hand, border patrol agents must keep our country safe by curbing the smuggling of undocumented aliens and drugs. On the other, our nation values individual autonomy and privacy, values reflected in the Fourth Amendment. The United States Supreme Court has held that a roving border patrol can stop a vehicle for a brief investigatory stop based on an articulable reasonable suspicion of criminal activity. We must here decide whether border patrol officers' stated

reasons for stopping a vehicle were sufficient to permit the stop without offending the Fourth Amendment's prohibition on unreasonable seizures.  We hold that the facts and inferences articulated by the border patrol agents established reasonable suspicion that criminal activity was afoot, justifying the stop.  We affirm the district court's denial of the motion to suppress the evidence of cocaine found as a result of the stop.

# I

Border Patrol Agent Luis Lopez was conducting surveillance in an unmarked vehicle on the shoulder of Interstate 15, about 70 miles north of the United States-Mexico border, when he saw a red Ford F-150 pickup truck, traveling north in the far right lane.  The truck was "traveling faster than the flow of traffic and passing many cars," and it had Baja California license plates.  He followed the truck and saw it make at least ten "erratic lane changes without signaling."  Eventually, he lost sight of the truck "because it was moving so quickly and weaving in and out of traffic."

Agent Lopez radioed Border Patrol Agent Jeffery Hays, told him about the truck, and asked him to assist.  Agent Hays, who was north of Agent Lopez, drove onto the interstate in a marked vehicle and tried to catch up to the truck.  Agent Hays reached the truck just south of the Temecula Border Patrol Checkpoint, the northernmost checkpoint on Interstate 15.  The truck was still driving in the far right lane, speeding at "well over" 90 miles per hour.  The flow of traffic was about 70 or 80 miles per hour, and the speed limit was 70.  Agent Hays saw the truck change lanes numerous times without signaling, causing vehicles behind it to brake.

As the two vehicles approached the checkpoint, the truck slowed to about 70 miles per hour and moved two lanes to the left, cutting off other vehicles. After passing through the checkpoint, Agent Hays, in his marked car, pulled alongside the truck, now two lanes to his left. The driver—later identified as Rufino Ignacio Valdes-Vega—looked straight ahead and did not make eye contact with Agent Hays. Agent Hays saw no other occupants in the truck, but he noticed the truck's older body style, clean appearance, and Baja California plates.

When Agent Hays turned on his lights to stop the truck, Valdes-Vega moved immediately to the far right lane. But Agent Hays thought that Valdes-Vega took longer than normal to pull over onto the shoulder, and pulled over to a narrow part of the highway. Once stopped, Valdes-Vega consented to a search of his truck, and the officers found about eight kilograms of cocaine.

Valdes-Vega was charged with possession with the intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). He moved to suppress the cocaine, contending that the agents' observations did not amount to reasonable suspicion that he was engaged in smuggling and that the resulting stop was illegal. After an evidentiary hearing, the district court denied the motion, finding that the officers had reasonable suspicion to stop the truck. Valdes-Vega entered a conditional guilty plea, reserving his right to appeal the denial of his motion to suppress the cocaine. This timely appeal followed. A three-judge panel reversed the district court. We decided to rehear the appeal en banc.

## II

"We review reasonable suspicion determinations de novo, reviewing findings of historical fact for clear error and giving 'due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (en banc) (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)). We thus apply "a peculiar sort of *de novo* review," *United States v. Arvizu*, 534 U.S. 266, 278 (2002) (Scalia, J., concurring), slightly more circumscribed than usual, because we defer to the inferences drawn by the district court and the officers on the scene, not just the district court's factual findings. *See Arvizu*, 534 U.S. at 273, 277; *Ornelas*, 517 U.S. at 699.

## III

Valdes-Vega contends that the agents' stop of his vehicle violated his Fourth Amendment right to be free from unreasonable seizures. We hold that the stop was lawful and that the district court properly denied the motion to suppress the cocaine found as a result of the stop.

Officers on roving border patrols, like the one at issue here, may conduct "brief investigatory stops" without violating the Fourth Amendment "if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." *Arvizu*, 534 U.S. at 273 (internal quotation marks omitted); *see also United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975). "Reasonable suspicion is defined as 'a particularized and objective basis for suspecting

the particular person stopped of criminal activity.'"[1] *Cotterman*, 709 F.3d at 968 (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)).

The reasonable-suspicion standard is not a particularly high threshold to reach. "Although . . . a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu*, 534 U.S. at 274 (citations and internal quotation marks omitted); *see also Brignoni-Ponce*, 422 U.S. at 881 ("The Fourth Amendment does not require   a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." (quoting *Adams v. Williams*, 407 U.S. 143, 145 (1972))). Reasonable suspicion is a "commonsense, nontechnical conception[] that deal[s] with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Ornelas*, 517 U.S. at 695 (quoting *Illinois v. Gates*, 462 U.S. 213, 231

---

[1] In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court held that an officer can stop and frisk a person when the officer "conclude[s] in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous." 392 U.S. at 30. Since *Terry* the Supreme Court has made clear that "in appropriate circumstances the Fourth Amendment allows a properly limited 'search' or 'seizure' on facts that do not constitute probable cause to arrest or to search for contraband or evidence of crime," based on *Terry*'s reasonable-suspicion standard. *Brignoni-Ponce*, 422 U.S. at 881. And the Court has expressly applied this standard in reviewing vehicle stops based on reasonable suspicion of smuggling. *See Arvizu*, 534 U.S. at 273–74; *Brignoni-Ponce*, 422 U.S. at 880–84.

(1983)). Protection of the public safety justifies such an approach.

When reviewing an officer's reasonable suspicion, we "must look at the 'totality of the circumstances.'" *Arvizu*, 534 U.S. at 273; *Cotterman*, 709 F.3d at 970 ("It is not our province to nitpick the factors in isolation but instead to view them in the totality of the circumstances."). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Arvizu*, 534 U.S. at 273 (citations and internal quotation marks omitted). It also precludes a "divide-and-conquer analysis" because even though each of the suspect's "acts was perhaps innocent in itself . . . taken together, they [may] warrant[] further investigation." *Id*. at 274. "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *Id*. at 277.

The nature of the totality-of-the-circumstances analysis also precludes us from holding that certain factors are presumptively given no weight without considering those factors in the full context of each particular case. *Id.* at 274. Thus, prior decisions holding that certain factors are *per se* not probative or are *per se* minimally probative do not now comply with Supreme Court precedent. *See id.* at 276 ("To the extent that a totality of the circumstances approach may render appellate review less circumscribed by precedent than otherwise, it is the nature of the totality rule."). We may conclude that "some factors [in a particular case] are more probative than others," *id*. at 277, but this evaluation cannot be done in the abstract by divorcing factors from their context in the stop at issue. "Each case must turn on the totality of

the particular circumstances" in that case. *Brignoni-Ponce*, 422 U.S. at 885 n.10.

In the context of border patrol stops, the totality of the circumstances may include characteristics of the area, proximity to the border, usual patterns of traffic and time of day, previous alien or drug smuggling in the area, behavior of the driver, appearance or behavior of passengers, and the model and appearance of the vehicle. *Brignoni-Ponce*, 422 U.S. at 884–85. Not all of these factors must be present or highly probative in every case to justify reasonable suspicion. *See id*. And the facts must be filtered through the lens of the agents' training and experience. *Id*. at 885.

Applying these settled standards to the stop of Valdes-Vega's truck, we conclude that the agents had an objective and particularized suspicion that Valdes-Vega was "engaged in wrongdoing." *Cortez*, 449 U.S. at 418. The district court's factual findings—paraphrased in our summary of the facts—were not clearly erroneous. *See Ornelas*, 517 U.S. at 699. Reviewing the totality of the circumstances, we conclude that many of the facts found relevant by the district court are highly probative in our view as well.

Agent Lopez and Agent Hays had eight and eleven years of experience as agents respectively, and both had significant experience investigating alien and drug smuggling. Agent Hays in particular had worked almost entirely at the Temecula checkpoint. The location of the stop, even though 70 miles north of the border, was significant because it was the northernmost (that is, the last) checkpoint on that interstate. The agents also reported that Interstate 15 is commonly used by smugglers coming from Mexico. The fact that Valdes-Vega's truck had Mexican license plates made

the possibility that it had recently crossed the border significantly more likely. And the border patrol agents noted that the type of vehicle was significant because trucks are suitable for carrying large amounts of contraband and make it difficult for agents to see into the vehicle.

Added to these factors is Valdes-Vega's driving, perhaps one of the most important factors in the total circumstances here. Both agents saw the truck excessively speeding, changing lanes frequently, weaving in and out of traffic, cutting off other drivers, causing them to brake—"basically an erratic driving pattern." But Valdes-Vega's driving changed as he approached the checkpoint, which the agents indicated is common among smugglers. He first slowed down and then speeded up as if to get through the checkpoint quickly. The agents noted that this behavior—the erratic driving, the change in speed—could be evasive maneuvering. Valdes-Vega's argument that border patrol agents do not enforce traffic laws misses the point. The erratic driving of the truck showed a pattern that the experienced agents recognized as common to smugglers.

In sum, the facts show that two experienced border patrol agents observed a truck with foreign plates driving in a suspicious manner in an area frequented by smugglers. The total circumstances garnered the attention of the agents. These circumstances align with factors that the Supreme Court has indicated may be significant in evaluating a roving border patrol stop, and we conclude that they are probative here. *See Brignoni-Ponce*, 422 U.S. at 884–85. In light of the totality of the circumstances, giving due weight to the agents' experience and reasonable deductions, we hold that the agents had a reasonable, particularized basis for

suspecting Valdes-Vega of smuggling contraband. The stop was supported by reasonable suspicion.[2]

Valdes-Vega urges us to resist this conclusion because he contends that innocuous factors remain so even when added together. Zero plus zero equals zero, his argument runs. But viewing the facts in the totality of the circumstances and taking into account the agents' training and experience, we decline to second-guess the agents' decision to stop the truck for investigation. Even innocent, noncriminal acts can foster reasonable suspicion in the total context. *See Arvizu*, 534 U.S. at 274. There is no need for an officer to rule out an innocent explanation. *See id*. at 277; *Cortez*, 449 U.S. at 411, 417. This holds true even if it is far from certain that the suspect is actually engaged in illegal activity. *See Arvizu*,

---

[2] The dissent of Judge Pregerson, joined by Judges Reinhardt and Thomas, asserts that the Border Patrol agents stopped the defendant "because of his Hispanic appearance." The agents did not testify to that, and that was not among the factors relied on by the district court in denying the defendant's motion to suppress. Judge Pregerson's dissent in this respect goes beyond the record and assumes Valdes-Vega looks stereotypically Hispanic. We do not rely on the supposed appearance of defendant in our decision affirming the district court's denial of the motion to suppress, and we hold that there was reasonable suspicion supporting the stop.

The dissent of Judge Pregerson champions the very principle that *Arvizu* precludes, arguing that each factor separately does not support reasonable suspicion. Judge Pregerson's position does not correctly assess whether all circumstances taken together showed reasonable suspicion when viewed through the lens of the experienced Border Patrol agents. Moreover, for the reasons expressed in our opinion, we do not find persuasive the attempt by Judge Reinhardt, in his separate dissent joined by Judges Pregerson and Thomas, to argue that the full circumstances were not suspicious, and thus to distinguish this case from the facts in the Supreme Court's unanimous *Arvizu* decision.

534 U.S. at 274; *see also United States v. Sokolow*, 490 U.S. 1, 7, 10 (1989); *Terry*, 392 U.S. at 27. A series of innocent acts may be enough for reasonable suspicion justifying an investigatory stop, even though the circumstances amount to far less than probable cause.

We do not endorse stopping cars based on mere whim. But Valdes-Vega's behavior was not so innocuous as to suggest that he was merely plucked from a crowd at random. It was his speed and erratic driving—which the agents thought fit the driving patterns of smugglers—that first caused the officers to notice his truck. That separated Valdes-Vega's truck from the other cars in traffic that day and separated Valdes-Vega from the population at large. To those observations, officers added the host of facts and inferences discussed above. Valdes-Vega was not just stopped, for example, because he happened to be driving a Ford truck, a fact that could describe many people. *Cf. Reid v. Georgia*, 448 U.S. 438, 441 (1980). He was stopped based on the whole scene observed by the agents over the course of five to ten miles while his truck was traveling along a known drug corridor not far from the border.

Valdes-Vega fundamentally misapprehends our task in review. We need not decide whether any single fact would be enough to support suspicion because we are not called upon to review single facts in isolation. We review the totality of the circumstances, which here is adequate to show reasonable suspicion.

**AFFIRMED.**

PREGERSON, Circuit Judge, with whom REINHARDT and THOMAS, Circuit Judges, join, dissenting:

Let's cut to the chase.

Border patrol agents stopped Valdes-Vega: because of his Hispanic appearance; because he was driving a clean Ford F-150 pickup with Baja California plates, 70 miles north of the U.S.-Mexico border on a major, busy California interstate highway; because he was driving faster than the flow of traffic and not signaling before lane changes; and because he kept his eyes on the road in front of him and not on the border patrol agents driving in the lane to his right.

Driving a clean Ford F-150 pickup is not suspicious. Driving with Baja plates is not suspicious. Driving 70 miles north of the U.S.-Mexico border is not suspicious. Driving with eyes kept on the road ahead is not suspicious. Driving faster than the flow of traffic and not signaling before lane changes on a major, busy California interstate highway is not suspicious. Driving while having Hispanic appearance is not suspicious.

Driving without signaling lane changes and faster than the flow of traffic on a major, busy California interstate highway—not uncommon in California—is referred to by the majority as "perhaps one of the most important factors in the total circumstances here." Such driving, plus defendant's Hispanic appearance, plus his eyes on the road, plus his driving a clean Ford F-150, plus the Baja plates, did not create a reasonable suspicion that criminal activity was

"afoot." *See United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

Therefore, I respectfully dissent.

REINHARDT, Circuit Judge, dissenting, with whom PREGERSON and THOMAS, Circuit Judges, join:

Although the majority is correct that *United States v. Arvizu*, 534 U.S. 266 (2002), held that "[e]ven innocent, noncriminal acts can foster reasonable suspicion in the total context," Majority at 11, it errs in ignoring the distinction between the innocent acts in this case and those in *Arvizu*. Not all acts are equal, and not all innocent acts are suspicious. Moreover, taken together, the acts observed here create a situation far less suspicious: Arvizu used a "primitive dirt road" commonly used to bypass a checkpoint, 534 U.S. at 269; Valdes-Vega stayed on the interstate. Arvizu avoided eye contact with a law enforcement officer on an empty road; Valdes-Vega avoided eye contact on a busy highway. *Id.* at 275–76 (finding that "failure to acknowledge a sighted law enforcement officer" is less "remarkable" when observed on a busy highway than on an empty dirt road). Arvizu's passengers waved "oddly," and with their knees elevated—a possible sign that their feet rested on contraband, *id.* at 276–77; Valdes-Vega had neither waving passengers nor elevated knees. Arvizu turned abruptly at the last place possible to avoid a checkpoint, *id.* at 271; Valdes-Vega went through the checkpoint. Finally, Arvizu's trip corresponded with a Border Patrol shift change, *id.* at 269, and Valdes-Vega's did not. While *Arvizu* indeed instructs us to avoid a

"divide and conquer analysis," *id.* at 274, it does not require us to ignore the relative probative value of various innocent acts, *id.* at 277 ("some factors are more probative than others"), or to allow an officer to make a stop based on a "mere hunch," *id.* at 274.

Therefore, for the reasons stated above and the reasons stated in Judge Pregerson's dissent, I also dissent.