NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 27 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff-Appellee, v. CESAR LOPEZ, AKA David Essex, AKA Frank Venegas, AKA Mark Venegas, Defendant-Appellant. | No. 18-50101 D.C. No. 2:16-cr-00650-JFW-2 MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted December 7, 2018
Pasadena, California

Before: WARDLAW and OWENS, Circuit Judges, and DORSEY,[**] District Judge.

Cesar Lopez entered a conditional guilty plea to four counts of mail-theft

related crimes. In this appeal, Lopez challenges the denial of his motion to

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Jennifer A. Dorsey, United States District Judge for the District of Nevada, sitting by designation.

suppress along with the scope of the district court's evidentiary hearing. Because the parties are familiar with the facts and procedural history, we do not recount them here except where necessary. Assuming without deciding that the plea agreement permits this appeal, Lopez's arguments fail on their merits. Therefore, we affirm.

**A.    The district court did not abuse its discretion in limiting the scope of the evidentiary hearing.**

A defendant is not entitled to an evidentiary hearing "merely because [he] wants one." *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000) (quoting *United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990)). Lopez submitted a declaration under the Central District of California's Local Criminal Rule 12-1.1, which requires motions to suppress to "be supported by a declaration on behalf of the defendant, setting forth all facts then known upon which it is contended the motion should be granted." But his declaration states only that "[o]n June 5, 2016[,] an officer asked [him] for consent to search [his] person" and that he "did not provide consent." The district court acted within its discretion in limiting the scope of the evidentiary hearing to the single factual issue raised in Lopez's declaration. *See United States v. Wardlow*, 951 F.2d 1115, 1116 (9th Cir. 1991) (per curiam) (finding no abuse of discretion in denying a hearing because the defendant "forfeited his right to a hearing by not properly submitting a declaration" under an applicable local rule identical to Local Criminal Rule 12-1.1).

2

**B.    The district court properly denied Lopez's motion to suppress.**

1.    The initial contact between the officers and Lopez was not a Fourth Amendment stop. An encounter is a seizure if, considering all the circumstances, a "reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). The officers did not activate their lights or sirens, parked a full car's length in front of Lopez's already-parked vehicle, and approached on foot. There is no evidence they touched their weapons during the encounter, and the tone of the initial questioning that can be heard in the audio recordings is civil and not overly authoritative. The encounter was therefore consensual, and no level of probable cause or reasonable suspicion was required for the officers to approach the vehicle and initiate a conversation with Lopez and his co-defendant. *See United States v. Washington*, 490 F.3d 765, 770 (9th Cir. 2007) (collecting cases) ("It is well established, however, that the Fourth Amendment is not implicated when law enforcement officers merely approach an individual in public and ask him if he is willing to answer questions.").

2.    Even if the initial contact between the officers and Lopez implicated the Fourth Amendment, the officers had reasonable suspicion to conduct an investigatory stop based on the perceived violation of California Vehicle Code § 5200(a) and the 911 call that initially drew them to the scene. *See United States*

*v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc) (stating that reasonable suspicion is "not a particularly high threshold").

3.      The officers had enough independent reasonable suspicion to prolong the initial contact with Lopez. The "tolerable duration" of a traffic stop "is determined by the seizure's 'mission' . . . ." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015) (citation omitted). The stop "may last no longer than is necessary to effectuate that purpose." *Id.* (alteration and quotation marks omitted).

The primary "mission" of this stop was to investigate the 911 call reporting a suspicious vehicle, not merely to check the car's registration status. The officers' initial questions and actions were tailored to that mission. Then, as the stop progressed, the officers gained independent reasons[1] to prolong it and, eventually, ask Lopez to get out of the car. The officers thus did not stray from the initial mission of the stop and did not unreasonably prolong it.

4.      The officers had reasonable suspicion to order Lopez to get out of the SUV. The district court found that the encounter "escalated to an investigative detention" requiring reasonable suspicion when the officers ordered Lopez out of the car. When reviewing reasonable suspicion, we must consider the totality of the

---

[1] These reasons included the baggie in the cup holder, the USPS hat that Lopez was wearing, the fact that Lopez's co-defendant wore a security vest and was acting nervous, and Lopez's statements about the ownership of the SUV, how he might be on probation, and that there might be a warrant out for his arrest.

circumstances, an approach that "precludes a 'divide-and-conquer analysis' because even though each of the suspect's 'acts was perhaps innocent in itself, taken together, they may warrant further investigation.'" *Valdes-Vega*, 738 F.3d at 1078 (alterations omitted) (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). Considering everything the officers knew at that point in the totality of the circumstances—and not individually, as Lopez argues—the officers had reasonable suspicion to escalate the stop to an investigatory detention.

5. The district court did not clearly err in finding that Lopez consented to the search of his person. *See Washington*, 490 F.3d at 769 ("[A] district court's determination whether a defendant voluntarily consented to a search depends on the totality of circumstances and is a question of fact we review for clear error." (citing *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1125–26 (9th Cir. 2005)). While Lopez is correct that there is no background police-radio broadcast in the recording when Sergeant Bateman asked to search Lopez's pockets, this does not render the district court's ruling clearly erroneous. Regardless of the reason Lopez's response is inaudible, the district court still did not rely on the recording to make its determination about consent. Instead, it relied on the Sergeant Bateman's testimony, which it found credible, and the circumstantial evidence that Lopez consented. It was not clear error to do so, nor was it clear error to conclude that Lopez consented to the search of his person.

6. Based on the totality of the circumstances, the officers had probable cause to search the SUV without a warrant. The automobile exception to the Fourth Amendment's warrant requirement allows police to conduct "a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime." *United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010). Like our reasonable-suspicion analysis, we examine the factors in a probable-cause analysis under the totality of the circumstances, and not individually. *See United States v. Davis*, 530 F.3d 1069, 1084 (9th Cir. 2008) (finding that an officer has probable cause "when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place" (internal quotation marks omitted)). The totality of the circumstances here justified the officers' belief that Lopez and his co-defendant were impersonating a security officer and postal worker to steal mail and that the SUV contained evidence of that crime.

Moreover, the officers did not exceed the permissible scope of a search under the automobile exception. The officers suspected Lopez and his passenger were engaged in crimes against the postal service, and arrow keys and stolen mail could have been concealed anywhere in the SUV. The officers searched only the parts of the SUV that reasonably could have contained the fruits of the suspected crimes. *See United States v. Ross*, 456 U.S. 798, 825 (1982) (holding that search

6

under the automobile exception extends only to areas "that may conceal the object of the search").

7.      The district court's finding that the officers would have inevitably discovered the evidence in the SUV was not clearly erroneous. *See United States v. Ruckes*, 586 F.3d 713, 718 (9th Cir. 2009) ("The inevitable discovery doctrine is an exception to the exclusionary rule" that "permits the government to rely on evidence that ultimately would have been discovered absent a constitutional violation."). The officers learned the SUV had been reported stolen and, under police-department procedures, they properly impounded it. They therefore could have conducted an inventory search, which would have inevitably revealed the evidence of mail theft.

**AFFIRMED**.