**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JAN 18 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-50342 |
| Plaintiff-Appellee, | D.C. No. 8:18-cr-00166-JVS-1 |
| v. | |
| JEFFREY CASTELLANOS, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted November 17, 2021
Pasadena, California

Before: BYBEE and BENNETT, Circuit Judges, and BATAILLON,[**] District Judge.

Jeffrey Castellanos entered a conditional guilty plea to a single count of possession with intent to distribute methamphetamine. 21 U.S.C. §§ 841(a)(1),

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska, sitting by designation.

841(b)(1)(B)(viii).  He appeals the district court's denial of his motion to suppress. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

Because the parties are familiar with the facts, we do not recount them here, except as necessary to provide context to our ruling.  Castellanos argues (1) that the officers conducted an unlawful search when they entered the curtilage of his friend's home by walking onto a driveway that he was permitted to use, and (2) that the officers seized him by a show of authority and by blocking his path before they had a reasonable suspicion that he was engaged in criminal activity.

This court reviews "the denial of the motion to suppress de novo and any associated factual findings for clear error."  *United States v. Brown*, 996 F.3d 998, 1004 (9th Cir. 2021).  "Whether an encounter between a defendant and an officer constitutes a seizure is a mixed question of law and fact that [this court] review[s] de novo."  *United States v. Washington*, 490 F.3d 765, 769 (9th Cir. 2007).

Castellanos's first argument fails because even if the area abutting the public alley could be considered curtilage (an issue we do not reach), he lacks standing to raise a Fourth Amendment claim under the trespass theory.  "[A]n overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not."  *Minnesota v. Carter*, 525 U.S. 83, 90 (1998).  The Court "considers curtilage—'the area immediately surrounding and associated with the home'—to be 'part of the home itself for Fourth

Amendment purposes.'" *Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018) (quoting *Florida v. Jardines*, 569 U.S. 1, 6 (2013)). It follows that only an overnight guest may claim the protection of the Fourth Amendment in the curtilage of a home.

Jaime Garcia declared that Castellanos had "permission to use [the] driveway and to access [the converted garage]." But mere permission is insufficient for Castellanos to have standing to raise a trespass theory claim for the officers' entry onto the driveway. Garcia did not testify that Castellanos could stay in the converted garage or the driveway overnight or had permission to exclude others from using the driveway or the garage. *Cf. Lyall v. City of Los Angeles*, 807 F.3d 1178, 1188 (9th Cir. 2015) ("[M]ost importantly, [the appellant] did not have the right to exclude others from any portion of the [property]."). Castellanos's argument that he had "possessory" rights in the driveway are unavailing. We stated in *Lyall* that standing under the trespass theory requires possessory rights "beyond mere permission to remain on the property searched." *Id.* at 1187 n.9. The *Lyall* court found that the plaintiffs had sufficient possessory rights to a warehouse that the police searched by showing that they "were in charge of the property that night" because they "had possession of the warehouse, the right to control it, and the right to bring an action in trespass against intruders." *Id.* at 1189. Castellanos established no such rights

here, showing only that he had the permission to park his car on the small strip abutting the public alley that he and Garcia describe as a driveway.[1]

Castellanos's second argument fails because, even assuming that he was seized when the officers approached him, the officers had reasonable suspicion to support the seizure. An officer may "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). "The officer must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch"' of criminal activity." *Id.* at 123–24 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). But reasonable suspicion "is not a particularly high threshold to reach." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013). "[T]he likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002). The court considers the totality of the circumstances and allows officers to rely on their training and experience. *See id.*

First, the "fact that the stop occurred in a high crime area [is] among the relevant contextual considerations in a *Terry* analysis." *Wardlow*, 528 U.S. at 124 (internal quotation marks omitted); *see also United States v. Williams*, 846 F.3d 303,

---

[1] We agree with the government that Castellanos waived the argument that the search violated his reasonable expectation of privacy, as he has argued only the trespass theory on appeal.

309–10 (9th Cir. 2016). As the government argues, the officers had objective bases for associating this alley with frequent crime, including that Officer Silva had arrested more than 15 suspects in that alley for crimes related to drugs, weapons, and stolen cars. *See United States v. Mayo*, 394 F.3d 1271, 1275 (9th Cir. 2005) ("[T]his meeting took place in a high-crime area and in front of a motel that hosted previous narcotics activity."); *United States v. Diaz-Juarez*, 299 F.3d 1138, 1142 (9th Cir. 2002) ("While [the appellant's] presence in a high-crime area cannot alone provide reasonable suspicion that he had committed or was about to commit a crime, [the officer] could consider this fact in forming reasonable suspicion." (citation omitted)). Second, nervous behavior is also a relevant consideration in analyzing reasonable suspicion. *United States v. Palos-Marquez*, 591 F.3d 1272, 1277–78 (9th Cir. 2010); *United States v. Crasper*, 472 F.3d 1141, 1144, 1147 (9th Cir. 2007). The encounter took place shortly before midnight, and officers observed Castellanos make quick movements stuffing or hiding something away in his vehicle in a high-risk drug and gang-activity area, just after he saw their police vehicle approaching. Such "furtive movements . . . [are] relevant to our analysis." *United States v. Job*, 871 F.3d 852, 861 (9th Cir. 2017); *see also United States v. Burkett*, 612 F.3d 1103, 1104, 1107 (9th Cir. 2010) (finding the fact that the defendant appeared to be "either hiding or retrieving something from underneath the seat" of his car to be one factor

supporting a stop and frisk).  The officers could reasonably suspect criminal activity given these circumstances.[2]

**AFFIRMED.**

---

[2] We agree with the government that Castellanos has waived any argument about the seizure or arrest after the Officers viewed the syringe just after approaching Castellanos.