**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-30077 |
| Plaintiff-Appellee, | D.C. Nos. 1:20-cr-00024-DLC-1 1:20-cr-00024-DLC |
| v. | |
| NICHOLAS JAMES IMHOFF, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, District Judge, Presiding

Argued and Submitted February 15, 2022
San Francisco, California

Before: GOULD and RAWLINSON, Circuit Judges, and ADELMAN,** District
Judge.

Nicholas James Imhoff (Imhoff) appeals his conviction for possession of

fifty grams or more of methamphetamine with intent to distribute. Imhoff

contends that the district court erred in denying his motion to suppress

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Lynn S. Adelman, United States District Judge for the
Eastern District of Wisconsin, sitting by designation.

methamphetamine discovered in his rental vehicle after a canine sniff conducted during a traffic stop in Montana. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the district court's denial of Imhoff's motion to suppress.

During the suppression hearing, the trooper testified that Imhoff provided a rental contract indicating that the vehicle was rented in Las Vegas, Nevada, two days prior to the traffic stop, for a five-day period. Imhoff informed the trooper that he was traveling to the oil fields in North Dakota for work, which the trooper found inconsistent with the five-day rental agreement. The trooper also observed that the vehicle contained "a trash bag," "a small day pack," "cigarettes, coffee drinks, [and] fast-food wrappers," but "no visible luggage." These observations generated a reasonable suspicion that Imhoff was engaged in narcotics trafficking rather than traveling for work.

The trooper further testified that, due to indications of "possible criminal drug activity," he asked dispatch for a criminal history check "while [he was] filling out the [traffic] warning card," and "[a]t no point did any detention last longer than it took to fill out the warning card." The trooper also related that Imhoff "could never specifically say where he was going," and Imhoff "changed his story three different times" concerning his residence in North Dakota.

Based on the totality of circumstances, the trooper had reasonable suspicion

to further investigate Imhoff's potential involvement in drug trafficking and did not impermissibly prolong the traffic stop. *See United States v. Raygoza-Garcia*, 902 F.3d 994, 1000 (9th Cir. 2018) (explaining that "we must look at the totality of the circumstances," and that reasonable suspicion "is not a particularly high threshold to reach") (citations and internal quotation marks omitted). The trooper requested a criminal history check and posed questions to Imhoff about his destination and background based on his suspicions that Imhoff was engaged in narcotics trafficking due to the items in the van, and discrepancies between the work schedules in the North Dakota oil fields and the rental agreement, viewed in light of the trooper's extensive experience and training in drug interdiction. *See United States v. Gorman*, 859 F.3d 706, 715 (9th Cir. 2017) (articulating that "[t]he Supreme Court has indicated that *within* the time reasonably required to complete the stop's mission, the Fourth Amendment may tolerate investigations that are unrelated to the purpose of the stop and that fall outside the scope of that mission") (citation and internal quotation marks omitted) (emphasis in the original); *see also Raygoza-Garcia*, 902 F.3d at 999 (recognizing the deference given to "inferences drawn by . . . officers on the scene"); *United States v. Arvizu*, 534 U.S. 266, 273 (2002) ("allow[ing] officers to draw on their own experience and specialized training").

3

The district court properly concluded that, under the totality of circumstances, the trooper had independent reasonable suspicion to conduct a canine sniff of the vehicle based on the discrepancies observed by the trooper indicating that Imhoff "was making a quick drug run," including Imhoff's inconsistent statements concerning his residence, and his inability to provide a specific address or zip code in North Dakota. *See United States v. Valdes-Vega*, 738 F.3d 1074, 1078-79 (9th Cir. 2013) (en banc) (stating that "[a] determination that reasonable suspicion exists need not rule out the possibility of innocent conduct") (citation and alterations omitted).

Relying on *United States v. Evans*, 786 F.3d 779 (9th Cir. 2015), Imhoff maintains that remand to the district court is warranted for the district court to more fully address the reasonable suspicion supporting the trooper's questions and records check. However, after conducting an extensive hearing on Imhoff's motion to suppress, the district court sufficiently developed "the findings of historical fact and the inferences drawn from those facts critical to resolving the parties' dispute concerning reasonable suspicion." *Id.* at 788 (internal quotation marks omitted). No remand is required. *See id.* at 789.

**AFFIRMED.**

4