**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUL 1 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-652 |
| Plaintiff - Appellee, | D.C. No. 3:22-cr-00081-VC-1 |
| v. | |
| DAMADRE TERXIDOR, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Vince Chhabria, District Judge, Presiding

Submitted May 14, 2024**
San Francisco, California

Before: LEE and BRESS, Circuit Judges, and TUNHEIM, Senior District Judge.***

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable John R. Tunheim, United States Senior District Judge for the District of Minnesota, sitting by designation.

Damadre Terxidor appeals the denial of his motion to suppress a loaded firearm discovered after a traffic stop. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

At around 10:00 p.m. on September 23, 2021, two officers patrolling the Tenderloin neighborhood of San Francisco spotted a Hyundai with an "unusual" paper license plate. The license plate, which appeared to be affixed to another plate, was smaller than typical. Additionally, the officers could not see a state of issuance anywhere on the plate due to the small font size.

The officers entered the plate number into the California Law Enforcement Telecommunications System ("CLETS"). When doing so, however, the officers failed to notice that the full plate number contained eight digits, not the seven digits used for California plates. They also failed to notice that CLETS, as a result, dropped the last digit from their query.

Because CLETS dropped the last digit from the officers' query, the system erroneously informed the officers that the number they entered was associated with a California plate registered to a Mercedes. This led the officers to believe that the Hyundai's paper plate was fake or stolen. In reality, the plate was a valid temporary Georgia plate.

After the officers stopped the Hyundai, Terxidor volunteered that he was on parole. The officers searched the car pursuant to the conditions of Terxidor's parole

and uncovered a loaded firearm. Terxidor filed a motion to suppress the loaded firearm, which the district court denied, and Terxidor entered a conditional guilty plea to being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1).

On appeal, Terxidor concedes that the officers could lawfully search the Hyundai once they learned he was on parole, but he argues that the officers lacked reasonable suspicion to stop him in the first instance because the stop was based largely on an unreasonable mistake of fact. Specifically, Terxidor argues that because the plate on the Hyundai was smaller than a California plate, did not say "California," had different font, and had a different alphanumeric sequence, it was objectively unreasonable for the officers to suspect it was a stolen California plate or an attempt at forging one. He further argues that, because of these characteristics, it was unreasonable for the officers to enter the plate number into a California-only database, rather than an all-state database. Finally, he argues it was unreasonable for the officers to fail to notice that the database returned results for a number that was one digit shorter than that which they entered.

"We review reasonable suspicion determinations de novo, reviewing findings of historical fact for clear error and giving due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *United States v. Valdes-Vega*, 738 F.3d 1074, 1077 (9th Cir. 2013) (en banc) (internal citation and

quotation marks omitted). In determining whether an officer had reasonable suspicion to stop a vehicle, courts "must look at the totality of the circumstances of each case" to see whether the detaining officer had a "particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal citations and quotations omitted). But "[t]o be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials . . . ." *Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014). "An officer might, for example, stop a motorist for traveling alone in a high-occupancy vehicle lane, only to discover upon approaching the car that two children are slumped over asleep in the back seat. The driver has not violated the law, but neither has the officer violated the Fourth Amendment." *Id.* at 57. "[O]bjectively reasonable" mistakes of fact will not invalidate an otherwise lawful stop. *Id.* at 66 (emphasis omitted).

Here, officers had reasonable suspicion to stop Terxidor given: (1) the officers encountered the Hyundai at night in an especially crime-heavy portion of the Tenderloin, (2) the appearance of the temporary plate affixed to the Hyundai appeared unusual to the officers, (3) the officers were unable to see a state of issuance on the plate, and (4) the officers' CLETS query—albeit mistaken—

indicated that the plate number affixed to the Hyundai was associated with a different vehicle.[1]

Moreover, the officers' conduct was not the type of "deliberate, reckless, or grossly negligent conduct" that the exclusionary rule is designed to deter. *See Herring v. United States*, 555 U.S. 135, 144 (2009). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* Here, one of the officers testified that it was "uncommon" to see temporary out-of-state plates and recalled seeing only two or three over his two years on patrol. And both officers "credibly testified" that they did not learn of the all-state database until the morning of the evidentiary hearing—months after the traffic stop. For these reasons, the district court did not err in denying Terxidor's motion to suppress.

**AFFIRMED.**

---

[1] Terxidor argues that it was clear error for the district court to find that the Hyundai was driving faster than surrounding traffic and that its occupants turned down the car's music upon spotting the officers. We need not decide this issue, however, because even if such findings were clear error, the officers still had reasonable suspicion to stop the Hyundai under the totality of circumstances.