NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>NICOLE SHERMAINE MARTINEZ,<br><br>Defendant-Appellant. | No. 24-530<br><br>D.C. No.<br>4:23-cr-00081-CKJ-MAA-1<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted September 13, 2024
Phoenix, Arizona

Before: RAWLINSON and COLLINS, Circuit Judges, and FITZWATER,[**]
District Judge.

Defendant Nicole Martinez appeals from the district court's denial of her

motion to suppress evidence of alien smuggling that was obtained during a traffic

stop as she headed north after a brief roundtrip to Menagers Dam, Arizona, a

village near the Mexican border. Following denial of the motion, Martinez was

convicted by a jury of transportation of, and conspiracy to transport, aliens

---

[*] This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

[**] The Honorable Sidney A. Fitzwater, United States District Judge for the
Northern District of Texas, sitting by designation.

unlawfully present in the United States. *See* 8 U.S.C. § 1324(a)(1)(A)(ii), (v)(I).

Martinez timely appealed the district court's judgment, and we have jurisdiction under 28 U.S.C. § 1291. "We review reasonable suspicion determinations de novo, reviewing findings of historical fact for clear error and giving 'due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" *United States v. Valdes-Vega*, 738 F.3d 1074, 1077 (9th Cir. 2013) (en banc) (citations omitted). We affirm.

Under the Fourth Amendment, an officer may conduct an investigatory stop of a vehicle when "the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (simplified). Reasonable suspicion exists when, under "the totality of the circumstances," the officer had "a particularized and objective basis for suspecting legal wrongdoing." *Id.* (simplified). In the context of border searches, relevant circumstances include: "(1) characteristics of the area; (2) proximity to the border; (3) usual patterns of traffic and time of day; (4) previous alien or drug smuggling in the area; (5) behavior of the driver, including obvious attempts to evade officers; (6) appearance or behavior of passengers; (7) model and appearance of the vehicle; and, (8) officer experience." *United States v. Palos-Marquez*, 591 F.3d 1272, 1277 (9th Cir. 2010) (simplified). "Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of

2

criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu*, 534 U.S. at 274 (citations omitted).

We agree with the district court that the officer here had reasonable suspicion to stop Martinez's vehicle. Menagers Dam is a half-mile from the border. Other than Federal Route 1 ("FR-1")—the route on which Martinez drove—Menagers Dam has no paved roads, and it likewise has no commercial establishments. Further, FR-1 is on the reservation of the Tohono O'odham Nation and is open only to Tohono O'odham Nation members "and their guests," and there are signs posted to this effect. Due to this restriction and the remoteness of the area, the FR-1 corridor has little traffic. It also does not have any border checkpoints. The officer who stopped Martinez had been a Border Patrol agent for about 17 years and had spent the previous four years working "almost exclusively" along the FR-1 corridor. The officer had "become familiar" with the area's residents' vehicles and "most" of their common familial names. He testified that drug and human smuggling frequently occur in Menagers Dam and that he had personally discovered drugs or aliens in Menagers Dam. In his experience, it was "typical" for smugglers to drive south to Menagers Dam, load aliens and/or contraband into their vehicles, quickly turn around, and drive back north. "[O]ften" the smugglers, the officer testified, are people who do not reside on the

Indian reservation.

"[F]iltered through the lens of the [officer's] training and experience," *Valdes-Vega*, 738 F.3d at 1079, the circumstances of Martinez's drive to Menagers Dam gave rise to reasonable suspicion. The officer had never seen Martinez's vehicle on FR-1 before. When he ran the vehicle's license plate, he learned that the vehicle was registered in Eloy, Arizona, a city about 100 miles away from Menagers Dam. The officer testified that, in his experience, vehicles registered in Eloy that appear in the area are frequently involved in smuggling. He did not recognize the surname of the person to whom the car was registered. Further, the officer first saw Martinez traveling south at 5:30 P.M., and yet just 40 minutes later, Martinez had turned around and headed back north, which was consistent with smuggling. "Taken together," all of the facts of this case "sufficed to form a particularized and objective basis for [the officer's] stopping the vehicle, making the stop reasonable within the meaning of the Fourth Amendment." *Arvizu*, 534 U.S. at 277–78. Although Martinez offers alternative explanations as to why her conduct could have been innocent, the court "need not rule out the possibility of innocent conduct" in making "[a] determination that reasonable suspicion exists." *Id.* at 277.

**AFFIRMED.**

4